# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, ) | |
| ) | Case No. 18-cv-1136 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| ROB JEFFREYS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff the Human Rights Defense Center ("Plaintiff" or "HRDC") brings this § 1983 action to enjoin Defendants' allegedly improper censorship of its monthly journal, Prison Legal News, and other publications that Plaintiff sends to prisoners in the Illinois Department of Corrections ("IDOC"). Plaintiff alleges that Defendants' censorship decisions violate the First and Fourteenth Amendments of the United States Constitution by preventing Plaintiff from communicating with inmates. Two sets of Defendants have moved for judgment on the pleadings: the Director Defendants, consisting of the current Director of IDOC, Rob Jeffreys ("Jeffreys") and the former Director of IDOC, John Baldwin ("Baldwin"); and the Administrative Review Board ("ARB") Defendants, consisting of current Board member Sherry Benton ("Benton") and former Board member Melissa Pelker ("Pelker," formerly Phoenix). For the reasons that follow the Court grants Plaintiff's motion for leave to file a sur-reply [180] and has considered the sur-reply in resolving Defendants' motions; grants Benton's and Pelker's motion for judgment on the pleadings [163-1]; and denies Jeffreys' and Baldwin's motion for judgment on the pleadings [158]. The dismissal of the claims against Benton and Pelker is without prejudice and with leave to replead

by September 5, 2022, if Plaintiff believes that it can do so consistent with this opinion and Federal Rule of Civil Procedure 11.

I. **Background**

Plaintiff HRDC publishes the monthly newsprint journal Prison Legal News, the longest-running independent newsprint journal concerning prisons and detention centers in the United States. In 2017, Plaintiff launched Criminal Legal News, a monthly publication covering the criminal justice system and reform outside the prison system. Plaintiff also publishes various publications focusing on prisoner rights issues and corresponds regularly with prisoners regarding constitutional issues and potential violations of their civil rights.

The complaint alleges that certain prisons within the state of Illinois have withheld all or part of issues of Prison Legal News and Criminal Legal News, as well as books published and distributed by Plaintiff. The complaint further alleges that Defendants have adopted and implemented mail policies and practices prohibiting delivery of written speech from Plaintiff while failing to provide due process notice of and an opportunity to challenge that censorship, which violates Plaintiff's rights under the First and the Fourteenth Amendments.

The Director Defendants and the ARB Defendants have moved for judgment on the pleadings on the claims brought against them in their individual capacities.

II. **Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. See *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Giannopoulos v. Iberia Lìneas Aèreas de España, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014). "The standard for entering judgment on the pleadings is the same as that for dismissing a complaint for failure to state a claim: 'the complaint must state a claim that

is plausible on its face.'" *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1092 (7th Cir. 2018) (quoting *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). It is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

### III. Analysis

Both sets of Defendants move for judgment on the pleadings on the basis that the complaint's allegations are insufficient to support a plausible claim that they are personally responsible for Plaintiff's constitutional injuries. A defendant "must be personally responsible for a constitutional deprivation in order to be liable" in her individual capacity under § 1983. *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); see also *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (under § 1983 "a government official is only liable for his or her own misconduct"). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Id*.

However, "personal responsibility is not limited to those who participate in the offending act." *Childress*, 787 F.3d at 439-40. Liability also "extends to those who, having a duty under the Constitution to the plaintiff, 'act[ ] or fail[ ] to act with a deliberate or reckless disregard of plaintiff's constitutional rights.'" *Id*. at 440 (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000)). "The factors necessary to establish a § 1983 violation against a prison

3

official depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Perez*, 792 F.3d at 781. To establish a First Amendment violation against the Defendants in their individual capacity, Plaintiff "must show that in their supervisory role, they 'knowingly, willfully, or at least recklessly' caused a deprivation of [its] First Amendment rights." *Jacobsen v. Illinois Dep't of Transp.*, 419 F.3d 642, 649 (7th Cir. 2005) (citing *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)).

### A. The Director Defendants

The Court first considers whether the governing complaint [150] states a claim against the Director Defendants, Jeffreys and Baldwin. Plaintiff has identified two potential paths for personal liability, based on (1) the alleged systemic nature of censorship in the IDOC prisons; and (2) the Director Defendants' alleged role in setting, maintaining, and failing to correct policies that, when enforced, resulted in a constitutional violation.

In *Antonelli v. Sheahan*, 81 F.3d 1422 (1996), the Seventh Circuit recognized that high-ranking jail administrators, including the Director of the Cook County Department of Corrections and Cook County Sheriff, were "far from most of the day-to-day decisions that may have affected inmates" and therefore could not "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *Id.* at 1428-29. However, they could "be expected to know of or participate in creating systemic, as opposed to localized, situations." *Id.* at 1429.

To resolve the Director Defendants' motion for judgment on the pleadings, *Antonelli* instructs that the Court should determine whether Plaintiff has identified any "potentially systemic" conditions, or instead has alleged only "clearly localized" conditions. *Id.* "There is no bright-line test that determines when a condition is systemic rather than localized, but courts have

4

found conditions to be systemic when they are 'unlikely to affect only one inmate in isolation.'" *Richard v. Pfister*, 2021 WL 3033543, at *3 (N.D. Ill. July 16, 2021) (quoting *Britton v. Williams*, 2017 WL 4410117, at *4 (N.D. Ill. Oct. 4, 2017)); see also *Silva v. Pfister*, 2021 WL 1103483, at *7 (N.D. Ill. Mar. 23, 2021). "Examples include restrictions on library access, tampering with the mail system, inadequate recreation or nutrition, vermin infestations, and extreme hot or cold temperatures, among others." *Eason v. Pritzker*, 2020 WL 6781794, at *5 (N.D. Ill. Nov. 18, 2020); see also *Richard*, 2021 WL 3033543, at *3 (listing examples). It may be "difficult to tell" at the pleading stage of the case "if the problem is non-systemic or systemic." *Jones v. Sheahan*, 2002 WL 959814, at *6 (N.D. Ill. May 9, 2002),

In this case, the complaint's allegations support a theory that Plaintiff's constitutional injury—its inability to communicate with prisoners, in violation of the First and Fourteenth Amendments—is a "potentially systemic" problem for which one or both of the Director Defendants could be found individually liable. *Antonelli*, 81 F.3d at 1429. The complaint alleges that each Director had the ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC, including mail censorship policies. See [150], ¶¶ 7, 8, 94, 95. These policies and practices allegedly "have deprived and will continue to deprive Plaintiff of the right to distribute its materials to prisoners, and of notice or opportunity to appeal when its publications are not delivered to prisoner subscribers." *Id.* ¶ 41; see also *id.* ¶ 42. Plaintiff provides sixty-five specific examples of improper censorship and/or lack of notice by prisons within IDOC. These examples include several in which mail was withheld expressly because it purportedly violating the prison's mail policies, see *id.* ¶¶ 63, 73, 89, and others where mail was withheld due to outright bans of Plaintiff publications, see *id.* ¶¶ 52, 54, 70.

5

These allegations plausibly suggest the existence of systemic constitutional violations likely to "affect[] a widespread group of inmates." *Eason*, 2020 WL 6781794, at *6. Therefore, it is reasonable to presume that high-ranking jail administrators like the Defendant Directors "kn[e]w of or participate[d] in creating'" the situation. *Id.* (quoting *Antonelli*, 81 F.3d at 1429). Defendants emphasize that most of the § 1983 case law concerning systemic conditions involves claims brought by prisoners, rather than claims brought by outside organizations such as Plaintiff. The Court is not convinced that this is a relevant distinction, rather than a natural consequence of who typically brings section 1983 claims against prison officials. Regardless of who is bringing suit to complain of IDOC's mail censorship policies, it is not unreasonable to presume that the prison director responsible for creating and maintaining the policies is aware of systemic problems that they create—problems that affect both Plaintiff and the prisoners who order Plaintiff's publications. The Court therefore concludes that Plaintiff has sufficiently pled that the Director Defendants are individually liable under 42 U.S.C. § 1983 and denies their motion to dismiss. *See, e.g., Dodson v. Cook County Jail*, 2019 WL 764041, at *4 (N.D. Ill. Feb. 21, 2019) (denying motion to dismiss § 1983 prison conditions claim against Cook County Jail Director, where plaintiffs alleged systemic violations, including a rat infestation, "for which … the Director can be expected to have personal responsibility"); *Jones*, 2002 WL 959814, at *6 (denying Cook County sheriff's motion to dismiss conditions concerning the Cook County jail's mailroom procedures, where it was unclear why plaintiff's legal mail was being mishandled).

In addition, Plaintiff also plausibly alleges that Baldwin took part in the adoption, approval, or implementation of IDOC's unconstitutional policies that directly caused the censorship of Plaintiff's publications. "In the case of those responsible for setting policy, liability will result from the institution of a 'policy that, when enforced, causes a constitutional deprivation.'"

*Childress*, 787 F.3d at 440 (quoting *Brokaw*, 235 F.3d at 1013); see also *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) ("if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

The complaint alleges that the Director Defendants are responsible for "the promulgation and implementation of IDOC policies, procedures, and practices" concerning mail censorship policies. [150], ¶¶ 7, 8; see also *id.* ¶¶ 94, 95. These policies and practices allegedly "have deprived and will continue to deprive Plaintiff of the right to distribute its materials to prisoners, and of notice or opportunity to appeal when its publications are not delivered to prisoner subscribers." *Id.* ¶ 41; see also *id.* ¶ 42. Comparable allegations have been found sufficient to support individual liability claims brought against jail officials with policymaking responsibility. See, e.g., *Childress*, 787 F.3d at 440 ("allegations that a prison administrator knew that the conditions of a prisoner's mandatory release included a ban on computer-related material, but nevertheless instituted, condoned, or willfully turned a blind eye to a practice that placed computer-related material among prisoners' possessions, state a claim for relief under the Eighth Amendment"); *Turner v. Cook Cnty. Sheriff's Office by & through Dart*, 2020 WL 1166186, at *4 (N.D. Mar. 11, Ill. 2020) (plaintiff, bringing suit as the special administrator for the estate of an individual who died of an overdose in jail, stated an individual capacity claim against Sheriff Dart where claim was "rooted in his alleged failure to implement policies that provide constitutionally adequate healthcare to detainees suffering from drug addiction and overdose" and "[b]ecause of his position, Sheriff Dart had final authority over Jail policies"); *Terry v. Cook County Dep't of Corrections*, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (denying motion to dismiss individual capacity claim against Sheriff Dart where, "[r]ead in the light most favorable to

Plaintiff, the amended complaint alleges that Dart failed to correct a deliberately indifferent policy that caused a constitutional injury").

For these reasons, the Court denies the Director Defendants' motion for judgment on the pleadings. To be sure, discovery may reveal that the Director Defendants to have been less involved in the policies and decisions about which Plaintiff complains than Plaintiff supposes. But Plaintiff's allegations clear the plausibility bar, both factually and legally, and Plaintiff's claims may move forward at this time against the Director Defendants—subject to further testing at the summary judgment stage.

### B. The ARB Defendants

The Court next considers Defendants Benton and Pelker (formerly Phoenix), who are current and former members of the ARB, respectively. The ARB is the body appointed by the Director of the IDOC to decide appeals from grievances that are denied at the facility level. See 20 Ill. Admin. Code § 504.850. The complaint alleges that these two Defendants "ruled on grievances based on IDOC policies, procedures, and practices … in regards to publication review and censorship." [150] at ¶¶ 28, 30. These are the only specific allegations concerning Benton and Pelker.

Ordinarily, the mishandling of grievances "by persons who did not cause or participate in the underlying conduct states no claim." *Owens v. Godinez*, 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Grieveson v. Anderson*, 538 F.3d 763, 772 & n.3 (7th Cir.2008); *Antonelli*, 81 F.3d at 1430). And more particularly to this case, "simply receiving a grievance and failing to rule on it in the manner Plaintiff wanted does not make [prison] officials liable for a First Amendment violation committed by other prison personnel." *Ames v. Baldwin*, 2017 WL 3184474, at *4 (N.D. Ill. July 26, 2017) (citing *Burks v. Raemisch*, 555 F.3d

592, 595 (7th Cir. 2009)). This is because "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, in the example provided by the Seventh Circuit in *George*, "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id*. at 609-10. Following the same principle, in *Hohol v. Jess*, 414 Fed. Appx. 853, 854 (7th Cir. 2011) (an unpublished opinion that is not treated as precedent, see 7th Cir. Rule 32.1), the court of appeals held that prison officials who approved the mailroom staff's decision to deny receipt of books ordered by a prisoner "did not cause or participate in the initial decision to deny receipt of the book set" and therefore were not subject to liability under § 1983.

Plaintiff argues that *George* does not foreclose its claim against the ARB Defendants because "the unlawful conduct here was (and still is) ongoing," as "[t]he Defendants have continually and systemically withheld and censored HRDC's publications from IDOC prisoners for years" and "these decisions were ruled on and approved by the ARB Defendants over the course of those years and as part of the ongoing unconstitutional practice at IDOC." [173] at 19-20. Plaintiff also relies on *Perez v. Fengolio*, 792 F.3d 768 (7th Cir. 2015), in which the Seventh Circuit held that grievance officials could be individually liable for deliberate indifference to an inmate's serious medical condition in violation of the Eighth Amendment. See *id.* at 781-82. There, "[t]he complaint allege[d] that the named defendants each obtained actual knowledge of Perez's objectively serious medical condition and inadequate medical care through Perez's coherent and highly detailed grievances and other correspondences" and "also allege[d] that each of these officials failed to exercise his or her authority to intervene on Perez's behalf to rectify the

9

situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment." *Id*. at 782.

Plaintiff argues that similar to the plaintiff in *Perez,* it "has pled that the ARB Defendants received grievances regarding the unconstitutional censoring of HRDC publications, thereby putting them on notice of the ongoing unlawful conduct, and subsequently approved of this conduct by ruling adversely to inmates." [173] at 19 (citing [150] at ¶¶ 28, 30). But this is not actually what the complaint alleges, which is the primary problem with Plaintiff's reliance on *Perez* and *George*. The complaint alleges only that each of the ARB Defendants "ruled on grievances based on IDOC policies, procedures, and practices at [at IDOC prison] in regards to publication review and censorship." [150] at ¶¶ 28, 30. It does not allege that the ARB Defendants heard any grievances concerning Plaintiff's publications or that the ARB rules against the inmates who filed the grievances.

Since there is no indication from the complaint that the ARB Defendants were aware of any grievances concerning Plaintiff's publications, there is likewise no basis for presuming that they received "coherent" or "highly detailed" information concerning Plaintiff's alleged constitutional injury, as did prison officials in *Perez*, 792 F.3d at 782. Nor can the ARB Defendants plausibly be compared to "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution," *George*, 507 F.3d at 609, since there are no facts indicating that they knew of Plaintiff's plight at all.

Further, the complaint does not allege any facts from which it could be plausibly inferred that the ARB Defendants were aware of any systemic, ongoing problems that allegedly caused Plaintiff's injury, or had the authority or ability to correct systemic problems. Unlike the Director Defendants, the ARB Defendants are not presumed to know of or have participated in creating

10

systemic unconstitutional situations. See *Antonelli*, 81 F.3d at 1429. And unlike the Director Defendants, the ARB Defendants are not alleged to be responsible "for the promulgation and implementation of IDOC policies, procedures, and practices" or "for the management of IDOC, including mail censorship policies." [150] at ¶¶ 7, 8. This is consistent with the ARB's much more limited role in the prisons, reviewing individual prisoners' appeals from prisons' grievance denials. See 20 Ill. Admin. Code § 504.850. The Court therefore concludes that the complaint fails to allege facts from which it can plausibly be inferred that the ARB Defendants "'knowingly, willfully, or at least recklessly' caused a deprivation of [Plaintiff's] First Amendment rights." *Jacobsen*, 419 F.3d at 649. The ARB Defendants' motion for judgment on the pleadings [163-1] is granted.

**IV. Conclusion**

For these reasons, the Court: grants Plaintiff's motion for leave to file sur-reply [180]; grants Benton's and Pelker's motion for judgment on the pleadings [163-1]; and denies Jeffreys' and Baldwin's motion for judgment on the pleadings [158]. As noted above, the dismissal of the claims against Benton and Pelker is without prejudice and with leave to replead by September 5, 2022, if Plaintiff believes that it can do so consistent with this opinion and Federal Rule of Civil Procedure 11.

Dated: August 4, 2022

_____
Robert M. Dow, Jr.
United States District Judge