**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 18-1136** |
| **ROB JEFFREYS in his official and individual** | ) | |
| **capacities, JOHN BALDWIN, DANIEL** | ) | |
| **SULLIVAN, SHELITH HANSBRO,** | ) | |
| **STEPHANIE DORETHY,** | ) | |
| **JACQUELINE LASHBROOK, KIM BUTLER,** | ) | |
| **KAREN JAIMET, MICHAEL MELVIN,** | ) | |
| **DAVID RAINS, JEFF DENNISON,** | ) | |
| **DAVID GOMEZ, RANDY PFISTER,** | ) | |
| **MATTHEW SWALLS, CAMERON WATSON,** | ) | |
| **STACEY CARTER, BILLY ROSE,** | ) | |
| **LISA SHEMONIC, PAMELA SCOTT,** | ) | |
| **TYLER BRADLEY, RICK ANDERSON,** | ) | **JURY TRIAL DEMANDED** |
| **SHERRY BENTON, and** | ) | |
| **MELISSA PHOENIX, in their individual** | ) | |
| **capacities, and DOES 1-30, in their individual** | ) | |
| **capacities.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff, HUMAN RIGHTS DEFENSE CENTER, by and through its

counsel, for its Complaint against Defendants Rob Jeffreys, John Baldwin, Daniel Sullivan, Shelith

Hansbro, Stephanie Dorethy, Jacqueline Lashbrook, Kim Butler, Karen Jaimet, Michael Melvin,

David Rains, Jeff Dennison, David Gomez, Randy Pfister, Matthew Swalls, Cameron Watson,

Stacey Carter, Billy Rose, Lisa Shemonic, Pamela Scott, Tyler Bradley, Rick Anderson, Sherry

Benton, Melissa Phoenix, and Does 1-30 (collectively, "Defendants"), states as follows:

**I.     INTRODUCTION**

**1.**     The HUMAN RIGHTS DEFENSE CENTER ("HRDC") brings this action to

enjoin Defendants' improper censorship of its monthly journal, *Prison Legal News*, and other

publications that HRDC sends to prisoners in the Illinois Department of Corrections ("IDOC"), in violation of the First and Fourteenth Amendments of the United States Constitution.

2.     Defendants have adopted and implemented mail policies and practices prohibiting delivery of written speech from HRDC while failing to provide due process notice of and an opportunity to challenge that censorship. Defendants' actions violate HRDC's rights under the First and the Fourteenth Amendments of the United States Constitution. HRDC thus brings this action, pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief and damages to be proven at trial.

## II.     JURISDICTION AND VENUE

3.     This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to HRDC by the laws of the United States.

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over claims seeking declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, against all Defendants.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). On information and belief, at least one Defendant, Stephanie Dorethy, resides within this judicial district, and many of the events giving rise to the claims asserted herein occurred within this judicial district. On information and belief, all Defendants are residents of the state of Illinois.

## III.     PARTIES

6.     HRDC is a not-for-profit charitable corporation recognized under § 501(c)(3) of the Internal Revenue Code, with its principal place of business in Lake Worth, Florida. Founded in

1990, HRDC publishes the monthly newsprint journal *Prison Legal News*, the longest-running independent newsprint journal concerning prisons and detention centers in the U.S. In 2017, HRDC launched *Criminal Legal News*, a monthly publication which covers the criminal justice system and reform outside the prison system. HRDC publishes various other publications focusing on prisoner rights issues and also corresponds regularly with prisoners regarding constitutional issues and potential violations of their civil rights.

7.      Defendant Rob Jeffreys ("Jeffreys") is, and on information and belief at relevant times herein mentioned was, the Director of IDOC, the state agency that manages the correctional facilities within the State of Illinois. Defendant Jeffreys has, and at relevant times had, the ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC. As to all claims presented herein against him, Defendant Jeffreys is being sued in his official and individual capacities for damages, and for injunctive and declaratory relief. At all relevant times, Defendant Jeffreys has acted under color of state law.

8.      Defendant John R. Baldwin ("Baldwin") was, on information and belief at relevant times herein mentioned, the Director of IDOC. Defendant Baldwin had ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC. As to all claims presented herein against him, Defendant Baldwin is being sued in his individual capacity for damages. At all relevant times, Defendant Baldwin has acted under color of state law.

9.      Defendant Daniel Q. Sullivan ("Sullivan") was, on information and belief at relevant times herein mentioned, the Warden of Big Muddy River Correctional Center ("Big Muddy"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Sullivan had responsibility for the execution of IDOC policies, procedures, and practices at Big Muddy, including the approval of publication censorship decisions. As to all

claims presented herein against him, Defendant Sullivan is being sued in his individual capacity for damages. At all relevant times, Defendant Sullivan has acted under color of state law.

10.     Defendant Shelith Hansbro ("Hansbro") was, on information and belief at relevant times herein mentioned, the Warden of Decatur Correctional Center ("Decatur"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Hansbro had responsibility for the execution of IDOC policies, procedures, and practices at Decatur, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Hansbro is being sued in her individual capacity for damages. At all relevant times, Defendant Hansbro has acted under color of state law.

11.     Defendant Stephanie Dorethy ("Dorethy") was, on information and belief at relevant times herein mentioned, the Warden of Hill Correctional Center ("Hill"), a prison under the control of the IDOC within the State of Illinois. At relevant times, Defendant Dorethy had responsibility for the execution of IDOC policies, procedures, and practices at Hill, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Dorethy is being sued in her individual capacity for damages. At all relevant times, Defendant Dorethy has acted under color of state law.

12.     Defendant Jacqueline Lashbrook ("Lashbrook") was, on information and belief at relevant times herein mentioned, the Warden of Menard Correctional Center ("Menard"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Lashbrook had responsibility for the execution of IDOC policies, procedures, and practices at Menard, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Lashbrook is being sued in her individual capacity for damages. At all relevant times, Defendant Lashbrook has acted under color of state law.

13.     Defendant Kim Butler ("Butler") was, on information and belief at relevant times herein mentioned, the Warden of Menard. At relevant times, Defendant Butler had responsibility for the execution of IDOC policies, procedures, and practices at Menard, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Butler is being sued in her individual capacity for damages. At all relevant times, Defendant Butler has acted under color of state law.

14.     Defendant Karen Jaimet ("Jaimet") was, on information and belief at relevant times herein mentioned, the Warden of Pinckneyville Correctional Center ("Pinckneyville"), a prison under the control of the IDOC within the State of Illinois. At relevant times, Defendant Jaimet had responsibility for the execution of IDOC policies, procedures, and practices at Pinckneyville, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Jaimet is being sued in her individual capacity for damages. At all relevant times, Defendant Jaimet has acted under color of state law.

15.     Defendant Michael Melvin ("Melvin") was, on information and belief at relevant times herein mentioned, the Warden of Pontiac Correctional Center ("Pontiac"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Melvin had responsibility for the execution of IDOC policies, procedures, and practices at Pontiac, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Melvin is being sued in his individual capacity for damages. At all relevant times, Defendant Melvin has acted under color of state law.

16.     Defendant David Rains ("Rains") was, on information and belief at relevant times herein mentioned, the Warden of Robinson Correctional Center ("Robinson"), a prison under the control of the IDOC within the State of Illinois. At relevant times, Defendant Rains had responsibility for the execution of IDOC policies, procedures, and practices at Robinson, including

the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Rains is being sued in his individual capacity for damages. At all relevant times, Defendant Rains has acted under color of state law.

17. Defendant Jeff Dennison ("Dennison") was, on information and belief at relevant times herein mentioned, the Warden of Shawnee Correctional Center ("Shawnee"), a prison under the control of the IDOC within the State of Illinois. At relevant times, Defendant Dennison had responsibility for the execution of IDOC policies, procedures, and practices at Shawnee, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Dennison is being sued in his individual capacity for damages. At all relevant times, Defendant Dennison has acted under color of state law.

18. Defendant David Gomez ("Gomez") was, on information and belief at relevant times herein mentioned, the Warden of Sheridan Correctional Center ("Sheridan"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Gomez had responsibility for the execution of IDOC policies, procedures, and practices at Sheridan, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Gomez is being sued in his individual capacity for damages. At all relevant times, Defendant Gomez has acted under color of state law.

19. Defendant Randy Pfister ("Pfister") was, on information and belief at relevant times herein mentioned, the Warden of Stateville. At relevant times, Defendant Pfister had responsibility for the execution of IDOC policies, procedures, and practices at Stateville, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Pfister is being sued in his individual capacity for damages. At all relevant times, Defendant Pfister has acted under color of state law.

**20.** Defendant Matthew Swalls ("Swalls") was, on information and belief at relevant times herein mentioned, the Warden of Vienna Correctional Center ("Vienna"), a prison under the control of the IDOC within the State of Illinois. At relevant times, Defendant Swalls had responsibility for the execution of IDOC policies, procedures, and practices at Vienna, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Swalls is being sued in his individual capacity for damages. At all relevant times, Defendant Swalls has acted under color of state law.

**21.** Defendant Cameron Watson ("Watson") was, on information and belief at relevant times herein mentioned, the Acting Warden of Western Illinois Correctional Center ("Western Illinois"), a prison under the control of IDOC within the State of Illinois. At relevant times, Defendant Watson had responsibility for the execution of IDOC policies, procedures, and practices at Western Illinois, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Watson is being sued in his individual capacity for damages. At all relevant times, Defendant Watson has acted under color of state law.

**22.** Defendant Stacey Carter ("Carter") is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Decatur. Defendant Carter carried out IDOC policies, procedures, and practices at Decatur in regards to publication review and censorship. As to all claims presented herein against her, Defendant Carter is being sued in her individual capacity for damages. At all relevant times, Defendant Carter has acted under color of state law.

**23.** Defendant Billy Rose ("Rose") is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Menard. Defendant Rose carried out IDOC policies, procedures, and practices at Menard in regards to publication review and censorship. As to all claims presented herein against him, Defendant Rose is being sued in his

individual capacity for damages. At all relevant times, Defendant Rose has acted under color of state law.

24. Defendant Lisa Shemonic ("Shemonic") was, on information and belief at relevant times herein mentioned, involved in reviewing publications at Menard. Defendant Shemonic carried out IDOC policies, procedures, and practices at Menard in regards to publication review and censorship. As to all claims presented herein against her, Defendant Shemonic is being sued in her individual capacity for damages. At all relevant times, Defendant Shemonic had acted under color of state law.

25. Defendant Pamela Scott ("Scott") is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Menard. Defendant Scott carried out IDOC policies, procedures, and practices at Menard in regards to publication review and censorship. As to all claims presented herein against her, Defendant Scott is being sued in her individual capacity for damages. At all relevant times, Defendant Scott has acted under color of state law.

26. Defendant Tyler Bradley ("Bradley") is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Menard. Defendant Bradley carried out IDOC policies, procedures, and practices at Menard in regards to publication review and censorship. As to all claims presented herein against him, Defendant Bradley is being sued in his individual capacity for damages. At all relevant times, Defendant Bradley has acted under color of state law.

27. Defendant Rick Anderson ("Anderson") was, on information and belief at relevant times herein mentioned, a Publication Review Officer at Western Illinois. Defendant Anderson carried out IDOC policies, procedures, and practices at Western Illinois in regards to publication review and censorship. As to all claims presented herein against him, Defendant Anderson is being

8

sued in his individual capacity for damages. At all relevant times, Defendant Anderson has acted under color of state law.

28.     Defendant Sherry Benton ("Benton") is, and on information and belief at all relevant times herein mentioned was, a member of the Administrative Review Board at the IDOC. Defendant Benton ruled on grievances based on IDOC policies, procedures, and practices at Menard in regards to publication review and censorship. As to all claims presented herein against her, Defendant Benton is being sued in her individual capacity for damages. At all relevant times, Defendant Benton has acted under color of state law.

29.     Defendant Melissa Phoenix ("Phoenix") is, and on information and belief at all relevant times herein mentioned was, a member of the Administrative Review Board at the IDOC. Defendant Phoenix ruled on grievances based on IDOC policies, procedures, and practices at Western Illinois in regards to publication review and censorship. As to all claims presented herein against her, Defendant Phoenix is being sued in her individual capacity for damages. At all relevant times, Defendant Phoenix has acted under color of state law.

30.     The true names and identities of Defendants DOES 1 through 30 are presently unknown to HRDC. Each of Defendants DOES 1 through 30 are or were employed by and are or were agents of IDOC when some or all of the challenged inmate mail policies and practices were adopted and/or implemented. Each of Defendants DOES 1 through 30 were personally involved in the adoption and/or implementation of the mail policies and practices at the IDOC facilities, and/or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of IDOC facilities staff who interpret and implement these mail policies. HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 30 have been ascertained.

## IV.    FACTUAL ALLEGATIONS

### A.    HRDC'S MISSION

31.    HRDC publishes and distributes a soft-cover monthly journal titled *Prison Legal News*, which contains news and analysis about prisons, jails, and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals. The monthly journal is published on newsprint and is 72-pages long.

32.    HRDC also publishes and distributes a soft-cover monthly journal titled *Criminal Legal News*, which focuses on the review and analysis of individual rights, court rulings, and news concerning criminal justice-related issues. The monthly journal is published in newsprint and is 56-pages long.

33.    HRDC also publishes and/or distributes approximately dozens of different softcover books about the criminal justice system, legal reference books, and self-help books of interest to prisoners. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics.

34.    For almost 30 years, the focus of HRDC's mission has been public education, advocacy, and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

35.    The purpose of HRDC, as stated in its Articles of Incorporation, Article III, Part 6, is to educate prisoners and the public about the destructive nature of racism, sexism, and the economic and social costs of prisons to society. HRDC engages in core protected speech and expressive conduct on matters of public concern, such as the operation of prison facilities, prison

conditions, prisoner health and safety, and prisoners' rights. HRDC's monthly journal and other publications, as described above, contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the U.S. Constitution.

36.     HRDC has thousands of subscribers in the United States and abroad, including prisoners, attorneys, journalists, public libraries, judges, and members of the general public. In the past 30 years, HRDC has distributed its monthly publication to prisoners and law librarians in more than 3,000 correctional facilities located across all fifty states, including the Federal Bureau of Prisons and IDOC.

37.     *Prison Legal News* and *Criminal Legal News* are very popular among inmates in Illinois. As of November 2021, HRDC had 400 subscribers to its monthly publications within the state of Illinois, including: 20 at Big Muddy; 11 at Centralia; 24 at Hill; 8 at Logan; 41 at Menard; 18 at Pinckneyville; 46 at Pontiac; 7 at Robinson; 13 at Shawnee; 5 at Sheridan; 35 at Stateville; 2 at Vienna; and 47 at Western Illinois. Between January of 2016 and November of 2021, the total number of subscribers to *Prison Legal News* in Illinois has varied from 179 to 400. Additionally, in furtherance of its mission and to increase the dissemination of its message, HRDC sends individually addressed sample copies of its publications to non-subscriber prisoners within IDOC.

### B.     CENSORSHIP AT IDOC FACILITIES

38.     The First Amendment of the United States Constitution protects HRDC's right to communicate with prisoners who are incarcerated within the IDOC. Regulations, policies, or practices that restrict the receipt of mail by prisoners are invalid unless they are rationally related to a legitimate penological interest.

39.     The Fourteenth Amendment of the United States Constitution requires that publishers receive notice of and be allowed to challenge restrictions on prisoners' receipt of mail. Regulations, policies, or practices that do not provide these minimum procedural safeguards are

invalid. Fourteenth Amendment rights are also violated where procedural safeguards are not followed as applied to a particular publisher.

40.     HRDC is informed and believes and thereon alleges that various prisons within IDOC's system do not comply with the First and/or Fourteenth Amendments. HRDC is informed and believes and thereon alleges that Defendants' policies and practices have deprived and will continue to deprive HRDC of the right to distribute its materials to prisoners, and of notice or opportunity to appeal when its publications are not delivered to prisoner subscribers.

41.     As described in further detail below, certain prisons within the state of Illinois have withheld all or part of issues of *Prison Legal News* and *Criminal Legal News*, as well as books published and/or distributed by HRDC. HRDC is informed and thereon believes that, as required by ILAC 525.230(a) and 525.230(d),[1] at least one officer at each prison (listed by name or as one of DOES 1-30 above), as well as the Warden of each prison, had direct knowledge of and were directly involved in each and every instance of censorship complained of below.

42.     HRDC is aware of at least the following specific examples of improper censorship and/or lack of notice by prisons within IDOC.

### 1.     CENSORSHIP AT BIG MUDDY

43.     HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Big Muddy did not receive complete issues of *Prison Legal News* and *Criminal Legal News* on multiple occasions.

---

[1] ILAC 525.230(a) provides that "A Publication Review Officer, hereafter referred to as Officer, shall review publications…"

ILAC 525.230(d) provides that "Any recommendation for denial shall be forwarded to the Chief Administrative Officer with an explanation.  If the Chief Administrative Officer concurs with the recommendation to deny the publication, the publication shall be disapproved." As used in that section, Chief Administrative Officer refers to the prison Warden.

44.    HRDC is informed and believes and thereon alleges that at least four prisoners at Big Muddy never received the June 2016 or August 2016 issues of *Prison Legal News*. In addition, HRDC is informed and believes that at least three prisoners at Big Muddy never received the May 2017, June 2017, July 2017, August 2017, September 2017, and October 2017 issues. Each of these issues of *Prison Legal News* were individually addressed and mailed to the subscribers incarcerated at Big Muddy. HRDC is informed and believes that, although each of those issues was properly delivered to Big Muddy, the issues were withheld from delivery by staff at the facility.

45.    HRDC is further informed and believes and thereon alleges that various pages of the February 2017, March 2017, April 2017, March 2018, June 2018, and July 2018 issues of *Prison Legal News* were censored by staff at Big Muddy. HRDC is informed and believes that, for these issues only, Big Muddy issued a Notification of Unauthorized Items to HRDC's subscribers. An exemplary copy of the notices of censorship sent to prisoners at Big Muddy is attached as **Exhibit A**. In the exemplary notice in **Exhibit A** sent to an HRDC subscriber, the Notification of Unauthorized Items fails to provide any substantive basis or explanation for why the pages were censored.

46.    HRDC is further informed and believes and thereon alleges that multiple issues of *Prison Legal News* were censored by staff at Big Muddy in February 2019.

47.    HRDC is further informed and believes and thereon alleges that at least one page of the September 2018 issue of *Criminal Legal News* was censored by staff at Big Muddy. HRDC is informed and believes that Big Muddy issued a Publication Receipt and Course of Action. A copy of the Publication Receipt and Course of Action is attached as **Exhibit B**.

48.    HRDC has never received any notice relating to censorship of any issues at Big Muddy. HRDC also never received any notification of an opportunity to appeal any censorship

decisions. This censorship of *Prison Legal News* and *Criminal Legal News* and the failure of Sullivan, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 2.     CENSORSHIP AT CENTRALIA

49.     HRDC is informed and believes and thereon alleges that the July 2018 issue of *Prison Legal News* was censored by staff at Centralia Correctional Center ("Centralia"), a prison under the control of IDOC within the State of Illinois. HRDC is informed and believes that Centralia issued a Publication Review Determination and Course of Action. A copy of the Publication Receipt and Course of Action is attached as **Exhibit C.** Additionally, in August 2018, one *Prison Legal News* subscriber wrote to HRDC indicating that staff at Centralia had removed pages or otherwise censored multiple issues of *Prison Legal News*.

50.     HRDC has never received any notice relating to censorship of any issues at Centralia. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 3.     CENSORSHIP AT DECATUR

51.     HRDC is informed and believes and thereon alleges that, as of May 2016, Decatur had imposed a blanket ban against the receipt and distribution of *Prison Legal News*.

52.     For example, at least one subscriber at Decatur wrote to HRDC in May of 2016 to notify HRDC that *Prison Legal News* was not allowed in the facility. That subscriber did not receive any further issues of the magazine. Another subscriber at Decatur wrote to HRDC in August of 2016 indicating that she had not received any of the issues of *Prison Legal News* that had been sent, including at least the July 2016 and August 2016 issues. That subscriber confirmed

that she had been shown a list of the banned materials at Decatur and that *Prison Legal News* appeared on that list.

**53.** At various times in 2016, packages from HRDC sent to subscribers at Decatur were returned by the U.S. Postal Service because Decatur refused their delivery. In particular, at least one package containing copies of *Prison Legal News* was returned from Decatur with a handwritten marking reading "Banned List" written across the top. An image showing the writing on this package is attached as **Exhibit D**. HRDC is aware of at least four packages sent to Decatur that have been marked "Return to Sender" and were not delivered.

**54.** HRDC has received a single letter from Decatur regarding its refusal to deliver the March 2016 issue of *Prison Legal News* to a single prisoner, indicating that the publication was refused because it is on the "IDOC Banned Publication List." A copy of the notice of censorship sent to HRDC by Decatur is attached as **Exhibit E**. Although the March 2016 issue of *Prison Legal News* was sent to seven prisoners at Decatur, this is the only notice that HRDC has ever received from that prison. HRDC has never been informed from any other source that its magazine is on any "IDOC Banned Publication List," nor has it been granted the opportunity to appeal any such decision.

**55.** The notice provided to HRDC is insufficient, as it fails to provide sufficient basis to justify this censorship. This censorship of *Prison Legal News* and the failure of Hansbro, Carter, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 4. CENSORSHIP AT HILL

**56.** HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Hill did not receive at least one issue of *Prison Legal News*. At least five subscribers at Hill wrote to HRDC to notify it that they did not receive the August 2017 issue.

57.     HRDC has never received any notice relating to censorship of any issues at Hill. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Dorethy, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 5.     CENSORSHIP AT LOGAN

58.     HRDC is informed and believes and thereon alleges that in June 2018, at least one prisoner subscriber incarcerated at Logan Correctional Center ("Logan"), a prison under the control of IDOC within the State of Illinois, did not receive the June 2018 edition of *Prison Legal News*. The subscriber wrote to HRDC to explain that they had been informed by staff at Logan that the June 2018 edition had been censored.

59.     HRDC has never received any notice relating to censorship of any issues at Logan. HRDC also never received any notification of an opportunity to appeal any censorship decisions. The censorship of *Prison Legal News* and the failure of Austin, Case, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 6.     CENSORSHIP AT MENARD

60.     HRDC is informed and believes and thereon alleges that Menard has censored and continues to censor materials of various types that HRDC has sent to prisoners incarcerated at that facility.

61.     For example, HRDC is informed and believes and thereon alleges that, from July 2016 to September 2017, at least five prisoners incarcerated at Menard did not receive ordered copies of books published or sold by HRDC that were not and are not included on any lists of banned publications furnished to HRDC.

62.     HRDC is further informed and believes and thereon alleges that a large number of the prisoner subscribers incarcerated at Menard did not receive various issues of *Prison Legal News*. At least 22 subscribers in Menard wrote to HRDC to notify it that they did not receive the June 2016 issue, and/or sent HRDC copies of notices they received from Menard informing them that some or all of the November 2015, June 2016, November 2016, August 2017, and January 2018 issues were being withheld for purportedly violating Menard's mail policies. HRDC's subscribers at Menard never received uncensored versions of these issues of *Prison Legal News*.

63.     HRDC is informed and believes and thereon alleges that the November 2015, June 2016, November 2016, August 2017, and January 2018 issues of *Prison Legal News* were censored by staff at Menard. HRDC is informed and believes that Menard sent notices of censorship relating to those issues of its publication to various subscribers, an exemplary copy of which is attached as **Exhibit F**.

64.     HRDC also received notices from Menard that the November 2015, June 2016, and November 2016 issues were being censored. An exemplary copy of these notices is attached as **Exhibit G**. HRDC has received no notice from Menard regarding any censorship of publications after November 2016.

65.     HRDC is further informed and believes and thereon alleges that the November 2019 issue of *Prison Legal News* was censored by staff at Menard. HRDC is informed and believes that Menard issued a Publication Review Determination and Course of Action. A copy of the Publication Receipt and Course of Action is attached as **Exhibit H.**

66.     HRDC is further informed and believes and thereon alleges that, in April of 2021, six books HRDC mailed to prisoners at Menard were rejected by staff at Menard. HRDC has not received notice of the censorship from IDOC. Nor did the return mailing provide adequate

information as to the reasons for the censorship. An image of the returned package is attached as **Exhibit I.**

67.     The notices provided to HRDC are insufficient, as they fail to provide sufficient basis to justify the censorship. The notices to HRDC were additionally insufficient for failing to provide meaningful opportunity to appeal the decision, as no instructions were provided on how HRDC could do so. Finally, HRDC has never received notice relating to censorship of the August 2017, January 2018, and November 2019 issues or the books mailed to the prisoner subscriber in April 2021. This conduct by Lashbrook, Butler, Rose, Shemonic, Scott, Bradley, Benton, and one or more DOES violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 7.     CENSORSHIP AT PINCKNEYVILLE

68.     HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Pinckneyville did not receive various issues of *Prison Legal News*. At least three subscribers at Pinckneyville wrote to HRDC to notify it that they did not receive one or more of the March 2016, April 2016, August 2016, October 2016, July 2018, and February 2019 issues. Each of these issues of *Prison Legal News* was properly mailed to the subscriber. HRDC is informed and believes that, although each of those issues was properly delivered to Pinckneyville, the issues were withheld from delivery by staff at the facility.[2]

69.     HRDC further is informed and believes and thereon alleges that in 2019, all issues of *Prison Legal News* were removed from the Pinckneyville Law Library. HRDC has not received notice of this incident of censorship from IDOC.

---

[2] In June of 2017, one subscriber received a Cumulative Counseling Summary detailing numerous grievances against the prison. In this document, Chalene Hale, an administrator at Pinckneyville, indicated that *Prison Legal News* was withheld by the prison after a publication review.

70.     HRDC has never received any notice relating to censorship of any issues at Pinckneyville. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Jaimet, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 8.     CENSORSHIP AT PONTIAC

71.     HRDC is informed and believes and thereon alleges that, in August 2016, at least one prisoner subscriber incarcerated at Pontiac did not receive ordered copies of books published or sold by HRDC that were not and are not included on any lists of banned publications.

72.     HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Pontiac did not receive various issues of *Prison Legal News*. At least 11 subscribers at Pontiac wrote to HRDC to notify it that they did not receive one or more of the November 2016, December 2016, and August 2017 issues, and/or sent HRDC copies of notices they received from Defendants informing them that some or all of the August 2017 issue was being withheld for purportedly violating Defendants' mail policies.

73.     HRDC is informed and believes and thereon alleges that Pontiac sent notices of censorship to various subscribers for the August 2017 issue of *Prison Legal News*. An exemplary copy of the notices of censorship sent to prisoners at Pontiac is attached as **Exhibit J**.

74.     HRDC has never received any notice relating to censorship of any issues at Pontiac. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Melvin, Baldwin, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 9.     CENSORSHIP AT ROBINSON

**75.** HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Robinson did not receive at least one issue of *Prison Legal News*. At least two subscribers at Robinson wrote to HRDC to notify it that they received the August 2017 issue only after certain pages had been removed.

**76.** HRDC is informed and believes that, for the August 2017 issue, Robinson issued a Notification of Unauthorized Items to HRDC's subscribers. An exemplary copy of the notices of censorship sent to prisoners at Robinson is attached as **Exhibit K**.

**77.** HRDC has never received any notice relating to censorship of any issues at Robinson. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Rains, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 10. CENSORSHIP AT SHAWNEE

**78.** HRDC is informed and believes and thereon alleges that one of the prisoner subscribers incarcerated at Shawnee did not receive all of least one issue of *Prison Legal News*. At least one subscriber at Shawnee wrote to Plaintiff to notify it that he received the August 2017 issue only after certain pages had been removed.

**79.** HRDC is informed and believes that, for the August 2017 issue, officials at Shawnee told HRDC's subscriber that certain pages of the August 2017 issue were censored.

**80.** HRDC has never received any notice relating to censorship of any issues at Shawnee. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Dennison, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 11.     CENSORSHIP AT SHERIDAN

**81.**     HRDC is informed and believes and thereon alleges that prisoners incarcerated at Sheridan are not permitted to subscribe to *Prison Legal News*. In particular, at least one would-be subscriber at Sheridan has informed HRDC that he is not permitted by staff to subscribe to the publication.

**82.**     HRDC has never received any notice from Sheridan that any of its publications were not permitted to be subscribed to at Sheridan. HRDC also never received any notification of an opportunity to appeal any censorship decisions. The failure of Gomez, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 12.     CENSORSHIP AT STATEVILLE

**83.**     HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Stateville did not receive at least one issue of *Prison Legal News*. At least three subscribers at Stateville wrote to HRDC to notify it that they received the August 2017 issue only after certain pages had been removed.

**84.**     HRDC is informed and believes that, for the August 2017 issue, Stateville issued a Notification of Unauthorized Items to HRDC's subscribers. An exemplary copy of the notices of censorship sent to prisoners at Stateville is attached as **Exhibit L**.

**85.**     HRDC has never received any notice relating to censorship of any issues at Stateville. HRDC also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and the failure of Pfister, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 13.      CENSORSHIP AT VIENNA

**86.**      HRDC received notice from Vienna that the January 2017 issue was being censored. A copy of this notice is attached as **Exhibit M**. HRDC has received no notice from Vienna regarding any censorship of publications after January 2017.

**87.**      The notice provided to HRDC is insufficient, as it fails to provide sufficient basis to justify this censorship. This censorship of *Prison Legal News* and the failure of Swalls, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 14.      CENSORSHIP AT WESTERN ILLINOIS

**88.**      HRDC is informed and believes and thereon alleges that many of the prisoner subscribers incarcerated at Western Illinois did not receive various issues of *Prison Legal News* and *Criminal Legal News*. At least five subscribers at Western Illinois wrote to HRDC to notify it that they did not receive the June 2016, July 2016, and August 2016 issues of *Prison Legal News* and/or sent HRDC copies of notices they received from Defendants informing them that some or all of the June 2016, July 2016, and August 2016 issues were being withheld for purportedly violating Defendants' mail policies.

**89.**      HRDC is informed and believes and thereon alleges that the June 2016, July 2016, August 2016, August 2018, and September 2018 issues of *Prison Legal News* were censored by staff at Western Illinois. An exemplary copy of the notices of censorship sent to prisoners at Western Illinois is attached as **Exhibit N**. In each case, the Notification of Unauthorized Mail fails to explain why the pages are being censored.

**90.**      HRDC is informed and believes and thereon alleges that the September 2018 issue of *Criminal Legal News* was censored by staff at Western Illinois. HRDC is informed and believes that Western Illinois issued a Publication Review Determination and Course of Action. An

exemplary copy of the Publication Receipt and Course of Action is attached as **Exhibit O**. In each case, the Publication Receipt and Course of Action fails to adequately explain why the pages are being censored.

**91.** HRDC has only received notice of censorship of the August 2018 issue of *Prison Legal News*. HRDC has not received any notice from Western Illinois regarding the censorship of issues of its magazine or any other materials. Specifically, HRDC has not received any notice that the June 2016, July 2016, August 2016, or September 2018 issues of *Prisoner Legal News*, or any pages in them, would not be delivered or were not delivered to the addressed recipients. Nor has HRDC received any notice that the September 2018 issue of *Criminal Legal News*, or any pages within, would not be delivered or was not delivered to the addressed recipients. HRDC has also never received any notification of an opportunity to appeal any censorship decisions. This censorship of *Prison Legal News* and *Criminal Legal News*, and the failure of Watson, Anderson, Phoenix, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

\* \* \* \*

**92.** In adopting and implementing the above censorship policies and practices, Defendants have knowingly violated, continue to violate, and are reasonably expected to violate in the future, HRDC's constitutional rights, and have caused HRDC serious and irreparable harm including, but not limited to: suppression of its political message, frustration of its organizational mission, loss of its ability to recruit new supporters, subscribers, and writers, loss of subscriptions, loss of opportunities for purchases and sales of its publications, loss of opportunities for book sales, and diversion of its resources. Absent intervention by this Court these actions will continue and HRDC will be subjected continuation of the same irreparable and serious injuries.

93.     The above violations of HRDC's rights and the harms to HRDC were caused by mail and censorship policies adopted or approved by Defendants Baldwin and Jeffreys in their capacities as directors of IDOC.

94.     The individual Defendants named herein are responsible for, or personally participated in, creating and implementing these unconstitutional mail and censorship policies, practices, and customs, and for training and supervising the mail staff at the various IDOC facilities who carry out these policies and whose conduct has injured and continues to injure HRDC.

95.     Defendants' unconstitutional policy, practices, and customs are ongoing and continue to violate HRDC's rights, and as such HRDC has no adequate remedy at law.

96.     HRDC is entitled to injunctive relief requiring Jeffreys to prohibit Defendants from refusing to deliver or refusing to allow delivery of publications, books, informational brochures, and catalogs, and other correspondence from HRDC, and prohibiting Defendants from censoring mail without due process of law.

97.     As a result of the foregoing, HRDC seeks compensatory and punitive damages against the individual Defendants.


**COUNT I: Violation of the First Amendment (Censorship)-42 U.S.C. § 1983**

98.     HRDC re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

99.     The acts described above constitute violations of HRDC's rights under the First Amendment of the United States Constitution.

100.    HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals, a right clearly established under existing case law.

101.    The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

102.    HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

103.    Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

104.    HRDC seeks injunctive relief against Rob Jeffreys in his official capacity, and nominal and compensatory damages against all Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

**COUNT II: Violation of the Fourteenth Amendment (Due Process)-42 U.S.C. § 1983**

105.    HRDC re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

106.    The acts described above constitute violations of HRDC's rights under the Fourteenth Amendment to the United States Constitution.

107.    Because HRDC has a liberty interest in communicating with prisoners, HRDC has a right under the Due Process Clause of the Fourteenth Amendment to receive notice of and an opportunity to appeal Defendants' decisions to censor their written speech.

108.    Defendants' policies and practices fail to provide HRDC with adequate notice and an opportunity to be heard.

109.    The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

110.    HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

111.    Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

112.    HRDC seeks injunctive relief against Rob Jeffreys in his official capacity, and nominal and compensatory damages against all Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

## V.    RELIEF REQUESTED

WHEREFORE, HRDC respectfully requests judgment against Defendants, jointly and severally, for the following:

**A.**    A declaration that Defendants' policies and practices violate the Constitution;

**B.**    A preliminary and permanent injunction requiring Jeffreys to prohibit Defendants from continuing to violate the Constitution, and providing other equitable relief;

**C.**    An award of compensatory, punitive, and nominal damages;

**D.**    An award of full costs and attorneys' fees arising out of this litigation; and

**E.**    Any and other further relief this Court may deem just and appropriate.

## VI.    DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, HRDC hereby demands a trial by jury in this action of all issues so triable.


Date: September 27, 2022                    Respectfully submitted,


                                            /s/ *Malorie R. Medellin*
                                            Malorie R. Medellin (ARDC No. 6306584)
                                            Kenneth G. Schuler (ARDC No. 6226036)

26

Marc N. Zubick (ARDC No. 6308239)
Sarah W. Wang (ARDC No. 6322872)
Greer M. Gaddie (ARDC No. 6332696)
Linda Qiu (ARDC No. 6333211)

LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
marc.zubick@lw.com

Alan Mills (ARDC No. 6181054)
Nicole Schult (ARDC No. 6306949)
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan
Chicago, Illinois 60640
Tel: (773) 769-1411
Fax: (773) 769-2224
alan@uplcchicago.org

Daniel Marshall (Fla. Bar No. 617210)
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, Florida 33460
Tel: (561) 360-2523
Fax: (561) 828-8166
dmarshall@hrdc-law.org


*Attorneys for Plaintiff*