IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | |
| Plaintiff, | Case No. 18-cv-01136 |
| v. | Judge Mary M. Rowland |
| JOHN BALDWIN, *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Human Rights Defense Center ("HRDC") sued 22 individual Defendants who are former or current Illinois Department of Corrections ("IDOC") employees under 42 U.S.C. § 1983, alleging that various of IDOC's mail publication review policies facially violate the First and Fourteenth Amendments, and that IDOC committed several violations of the same amendments as applied to HRDC. Following extensive briefing, the Court granted in part and denied in part both parties' cross-motions for summary judgment. [356]. Before the Court now is Defendants' motion to reconsider the Court's summary judgment opinion (the "Opinion"). For the following reasons, Defendants' motion to reconsider [357] is granted in part and denied in part.

## LEGAL STANDARD

A court may alter or amend a judgment when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir.2006). In assessing whether there is a "manifest error", the Seventh Circuit has elaborated that a motion

1

to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990).

While the Federal Rules of Civil Procedure allow a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

## ANALYSIS[1]

### I. Overview

Defendants argue that the Court made three manifest errors in its opinion: (1) by granting declaratory and injunctive relief with regard to prior policies ("ADs"), (2) by holding that the Security Threat Group ("STG") and Catch-All provisions of the 2022 AD were facially unconstitutional, and (3) by holding that Individual Defendants could be liable for nominal damages where they acted only with negligence. The Court addresses each argument in turn.

---

[1] The Court assumes familiarity with the facts of the case and its ruling on the parties' cross-motions for summary judgment. [356].

## II. Injunctive and Declaratory Relief

Defendants argue that the Court erred in granting declaratory and injunctive relief with respect to the 2006 and 2019 ADs because (a) HRDC's claims with respect to both policies were mooted by the 2022 AD and (b) an award of injunctive or declaratory relief would violate the Eleventh Amendment. The Court disagrees on both counts.

### a. Mootness

First, the Court notes that Defendants do not raise any new mootness arguments in their motion to reconsider and instead rehash the arguments they made in their summary judgment briefing. The Court disagrees with those arguments for the same reason it did when it issued the Opinion. Claims for declaratory judgment are moot where "relief . . . would have no impact on the parties to th[e] suit," *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001), and claims for injunctive relief are moot when the "event to be enjoined has come and gone." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 882 (10th Cir. 2019) (citing *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014)).

The Court held that HRDC was entitled a declaratory judgment to the effect that the notice and appeal provisions of the 2006 AD and 2019 AD were facially unconstitutional. Defendants argue that was improper because declaratory relief under Section 1983 is only available "if there is a continuing violation of federal law." [357] at 2 (citing *Kress v. CCA of Tenn., LLC*, 694 F.3d 890. 894 (7th Cir. 2012)).

Here, the Court held that there *is* a continuing violation of federal law. Defendants (1) argued that the prior ADs were constitutional, (2) acknowledged that HRDC was denied various notice and appeal processes pursuant to those ADs, and (3) *continue to deny HRDC* notice and appeal processes with respect to censored publications *because Defendants continue to believe* that the relevant provisions of the prior ADs are constitutional. *See* [306] at 40-44 (arguing at length that Defendants were justified in failing to provide notice of censorship under the terms of prior ADs).

Defendants argue now for the first time that whether or not the provisions of the prior ADs are facially unconstitutional is moot because HRDC can simply resend the previously censored publications and they will be considered under the provisions of the 2022 AD. [357] at 3. *If* HRDC had re-sent older publications and *if* Defendants had considered them under the 2022 AD, Defendants may be correct that HRDC's claims with respect to the prior ADs were mooted. But that is not what happened. Instead, what happened is that Defendants violated HRDC's constitutional rights under their prior-existing policies, never cured that violation, and argued that the violation was justified under the prior-existing policies because those policies were facially constitutional. In short, a declaratory relief that the policy is unconstitutional "would have [] impact on the parties to th[e] suit." *Tobin*, 268 F.3d at 528.

The same result flows from Defendants' challenges to HRDC's claims for injunctive relief stemming from the prior policies. As Defendants note, when a policy, regulation, or statute is at issue, an injunction may only be entered to correct a current, ongoing violation of the plaintiff's constitutional rights. *See, e.g., Farmer v. Brennan*, 511 U.S.

4

825, 846 (1994) ("[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future."). Without such a "continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers." *Kress*, 694 F.3d at 894. Here, HRDC argued (and the Court agreed) that in specific instances Defendants violated HRDC's rights, and those violations could be cured with injunctive relief. For example, the parties agreed that HRDC was never given notice of Defendants' censorship decision with respect to PLN Vol. 27, No. 7. HRDC was thus deprived of its Due Process right to appeal that decision, and that deprivation is ongoing in that HRDC has never been given a chance to appeal the decision. That Defendants *ex post facto* adopted a newer policy under which HRDC's rights may or may not have been violated does not obviate the fact that its rights *were* violated, and that violation has never been cured. The event to be enjoined, then, has not yet passed, so HRDC's claim for injunctive relief is not moot. *Prison Legal News*, 944 F.3d at 882.

Defendants also urge that the Court cannot grant declaratory or injunctive relief regarding past policies because such requests are mooted when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." [357] at 3-4 (citing *Tucker v. Hughes*, No. 18 CV 3154, 2024 WL 3495025, at *9 (N.D. Ill. July 22, 2024))[2]. In making this assessment, "[w]hen defendants are public officials

---

[2] *Tucker* offers a helpful illustration. There, an inmate sought a declaration that a prison violated his rights by banning him from the internet pursuant the prison's internet access policy. 2025 WL 3495025, at *9. While the parties were in litigation, the prison reversed his ban, approved his use of the internet, and revised the policy under which he was initially banned. *Id*. The plaintiff-inmate argued that his claims were not moot because the prison may at some point in the future ban him from

5

... greater stock [is placed] in their acts of self-correction, so long as they appear genuine." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020). A public entity is entitled to the presumption that it acts in good faith. *Id.* at 646–47.

Here, it is far from "absolutely clear" that Defendants' alleged wrongful behavior—denying HRDC adequate notice of a censorship decision or the opportunity to appeal that decision—could not recur in large part because in their summary judgment briefing, Defendants continued to maintain that the notice and appeal provisions of the prior ADs *are constitutional*. [306] at 40-44. The Court does not ascribe bad faith to these arguments; rather, the Defendants argued in good faith that they were justified in denying HRDC notice and appeal of censorship under the terms of the prior ADs. Defendants' good faith (if mistaken) belief in the constitutionality of the prior ADs is precisely why injunctive relief is appropriate in this case. HRDC cannot be assured that Defendants will not again violate their Due Process rights if Defendants continue to maintain that the provisions of the prior ADs under which Defendants violated their Due Process rights are constitutional.

### b. Eleventh Amendment

Defendants also argue (for the first time in their motion to reconsider) that the Court's award of declaratory relief violates the Eleventh Amendment. In support, Defendants rely on *Green v. Mansour*, where the Supreme Court explained that the

---

using the internet. *Id*. The court disagreed, holding that because he was not still subject to the initial ban, the court's decision would have no effect on the rights of the litigants, and the issue was moot. *Id*. The difference is that in *Tucker*, the violation ended when the prison lifted the internet ban under its newer policy. Here, the violation of HRDC's right to notice and appeal as to PLN Vol. 27, No. 7 did not end with the passing of a new policy.

6

Eleventh Amendment bars (1) an award of injunctive relief where there is no continuing violation of federal law and (2) an award of declaratory relief where the declaration might lead to an "end run" around the Eleventh Amendment's prohibition of an award of damages or restitution by the a federal court. 474 U.S. 64, 73 (1985). Neither concern exists here. For the reasons discussed above, there are continuing violations of federal law, and there is no argument that an award of declaratory or injunctive relief might lead to an award of damages or restitution. The Eleventh Amendment thus does not bar injunctive or declaratory relief here.[3]

### III. Vagueness of the 2022 AD's STG and Catch-All Provision

Next, Defendants argue that the Court erred in holding that the 2022 AD's STG and Catch-All Provisions were unconstitutionally vague. Defendants urge that neither provision is impermissibly vague, noting that in in *Borzych v. Frank*, the Seventh Circuit held '[s]ome open-ended quality is essential if a prison is to have any guidelines; it is impossible to foresee all literature that may pose a threat to safety and security." 439 F.3d 388, 392 (7th Cir. 2006). But *Borzych* dealt with a prisoner's challenge to regulations on his *own* First Amendment rights rather than an outside publisher's right to communicate with prisoners.

In any event, the problem with the STG and Catch-All Provisions is not just that they have "some open-ended quality." The problem is that, as written, it is not at all clear how the provisions interact with one another such that multiple mutually

---

[3] The parties dispute whether Defendants waived any argument under the Eleventh Amendment by failing to raise it in their summary judgment briefing. Because the Court holds that the Eleventh Amendment does not bar relief, the Court declines to address whether the issue was waived.

7

exclusive interpretations are equally plausible. As the Court explained in its opinion, one could read the 2022 AD narrowly to *only* prohibit STG content if it was detrimental to the safety of the facility as contemplated by Section (G)(2)(h) *or* widely such that any publication depicting a hand sign or symbol related to an STG might be prohibited. When "[p]ersons of common intelligence would be required to guess at a phrase's meaning and differ as to how [a] regulation should be enforced," that regulation is impermissibly vague. *Int'l Soc. for Krishna Consciousness v. Rochford*, 585 F.2d 263, 268 (7th Cir. 1978).

Defendants also argue that the Court erred by not separately assessing the vagueness of the Catch-All Provision. Defendants are correct that Court did not conduct an independent assessment of Section (G)(2)(h) without consideration of the Section's subparts. But the Court did not do so precisely *because* its subparts render the Section vague. Defendants argued that the Catch-All Provision would only allow for STG content to be censored *if* it was deemed "detrimental" as contemplated by Section (G)(2)(h) of the 2022 AD. But an equally plausible reading of the Catch-All Provision is that it *defines* "detrimental" to include every individual disjunctive clause contained in the STG Provision, Section (G)(2)(h)(4). *See* Pls. Ex. 95 at 4-5. The uncertainty around how both provisions interact renders them both vague. Analyzing either in a vacuum cannot solve that problem. Because a publisher could not be expected to read the challenged provisions and understand what kinds of content they prohibit, the provisions are unconstitutionally vague.

8

Defendants argue that the 2022 AD's Catch-All Provision is nearly identical to a Bureau of Prisons ("BOP") provision upheld by the Supreme Court in Thornburgh v. Abbott, 490 U.S. 401 (1989). The *Thornburgh* policy is indeed similar, and it provides a BOP warden with discretion to reject a publication if it meets any of seven non-exhaustive criteria. *See id.* at 405 n.5. The difference is that each of those seven criteria in the *Thornburgh* policy is relatively clear such that a potential publisher could understand what they prohibit. Here, conversely, a straightforward reading of the Catch-All Provision could mean that *every* publication that includes *any* of the disjunctive clauses in STG Provision "shall" be excluded as detrimental. Again, it is (1) the vagueness in the STG Provision itself and (2) the vagueness in how both Provisions interact that renders the Catch-All Provision unconstitutionally vague.

**Individual Defendants' Liability**

### a. An Individual Defendant Acting With Negligence Is Not Liable in a Section 1983 Claim.

Finally, Defendants argue that the Court erred in holding that Individual Defendant were liable to HRDC for nominal damages when they acted only with negligence. Defendants are correct.

In a Section 1983 claim, a culpable state of mind is an essential element of liability. *Wells v. Caudill*, 967 F.3d 598, 601 (7th Cir. 2020). And while damages are generally available in a Section 1983 claim where a plaintiff is deprived of a right, *see Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990), damages in a civil case can only be awarded after liability has been found. *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012); *see also Hansen v. Bennett*, 948 F.2d 397, 399 (7th Cir. 1991) ("In a First

9

Amendment claim like Hansen's, proving that the official violated clearly established First Amendment rights requires the plaintiff to prove that the official intended to suppress speech on the basis of its content.").

The Court awarded HRDC nominal damages and declaratory relief against Defendants Hansbro, Carter, Scott, Watson, Anderson, and Baldwin despite finding that each acted only with negligence. That was an error. Because each cannot be held liable in a Section 1983 claim without acting with some mental state beyond gross negligence, Defendants Hansbro, Carter, Scott, Watson, Anderson, and Baldwin are each entitled to summary judgment on all damages claims against them in their individual capacity.

### b. Defendant Sullivan is Entitled to Summary Judgment on HRDC's First Amendment Claim.

In the Opinion, the Court found that disputes of fact precluded an award of summary judgement with respect to HRDC's damages claim against Defendant Sullivan. [356] at 43. While Sullivan served as warden at Big Muddy, several of HRDC's publications were censored, but the reason for their censorship is unclear because Big Muddy personnel did not complete the appropriate documentation forms. [356] at 27-28. Defendants now urge that even given that dispute of fact, Sullivan is entitled to summary judgment because the evidence does not show he acted with a degree of culpability beyond gross negligence.

Defendants are correct. The question is whether a reasonable factfinder could find that Sullivan "knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye for fear of what he might have seen." *Jones v. City of Chicago*, 856

10

F.2d 985, 992 (7th Cir. 1988) (cleaned up). HRDC argues that Sullivan's signature on various non-compliant audit reports is sufficient to create a dispute of fact as to his mental state. [365] at 8. But as the Court explained in its Opinion, HRDC has not presented evidence that the findings contained in those audit reports are related to the deprivation of HRDC's rights in this case. [356] at 44. Further, HRDC conceded that Sullivan took corrective actions after being made aware of a non-compliant audit by hiring additional PROs. [326] ¶ 87. HRDC has not provided evidence that Sullivan knew and facilitated, approved, condoned, or turned a blind eye towards the censorship of the relevant publications.[4] There is thus no evidence that Sullivan acted with a mental state beyond gross negligence, and he is entitled to summary judgment on HRDC's First Amendment claim as a result.[5]

### c. Defendant Jeffreys is Entitled to Summary Judgment on HRDC's Fourteenth Amendment Claim.

For similar reasons, Defendants argue that Defendant Jeffreys is entitled to summary judgment on HRDC's Fourteenth Amendment claim against him. The undisputed (and disputed) evidence reflected that at most one article of PLN was censored during Jeffreys's almost five-year tenure. [356] at 43. The Court held that summary judgment on HRDC's Fourteenth Amendment claim against Jeffreys could

---

[4] PLN Vol. 28, No. 2 (February 2017), PLN Vol. 28, No. 3 (March 2017), PLN Vol. 28, No. 4 (April 2017), PLN Vol. 29, No. 2 (February 2018), PLN Vol. 29, No. 3 (March 2018), PLN Vol. 29, No. 5 (May 2018), PLN Vol. 29, No. 6 (June 2018), PLN Vol. 29, No. 7 (July 2018), PLN Vol. 29, No. 8 August 2018)

[5] The Court previously held that Sullivan was entitled to summary judgment with respect to HRDC's Fourteenth Amendment claims related to each publication at Big Muddy because, although HRDC did not receive notice of the censorship, HRDC presented no evidence establishing Sullivan's personal involvement with or knowledge of the notice process. [356] at 43.

not be awarded to either party because there was a genuine dispute of fact as to whether HRDC received notice of that article's censorship. [356] at 44.

Defendants argue that even if HRDC did *not* receive notice, the Court should have awarded Jeffreys summary judgment because HRDC did not present any evidence that he acted with a mental state beyond gross negligence. Defendants are again correct. Based on the summary judgment record, a reasonable factfinder could not find that Jeffreys "kn[ew] about the [the single instance of censorship and failure to provide notice] and facilitate[d] it, approve[d] it, condone[d] it, or turne[d] a blind eye for fear of what [he] might have seen." *Jones*, 856 F.2d at 992 (cleaned up). During Jeffreys' tenure, there were between 179 and 400 subscribers of CLN or PLN, each of which is published monthly. [326] ¶¶ 21-22. During that time, HRDC presented evidence that a single article was censored without notice. No reasonable jury could find on this record that Jeffreys acted with any mental state beyond gross negligence. Jeffreys is thus entitled to summary judgment on HRDC's Fourteenth Amendment claim.[6]

## CONCLUSION

For the stated reasons, Defendants' motion for reconsideration [357] is granted in part and denied in part. It is denied to the extent that Defendants seek to reverse the Court's award of declaratory relief as to HRDC's facial attacks on the STG Provision and Catch-All Provision in the 2022 AD, as well as HRDC's facial attacks on the

---

[6] Defendants also argue that the Court erred in holding that the Individual Defendants were not protected by the qualified immunity doctrine. The Court declines to reach this argument because it has found that each Individual Defendant is entitled to summary judgment for other reasons.

12

notice and appeal provisions of the 2006 and 2019 AD. It is granted, and the Court's order dated March 31, 2025 [356] is amended to reflect the same, insofar as Individual Defendants Hansbro, Carter, Scott, Watson, Anderson, Baldwin, Sullivan, and Jeffreys are entitled to summary judgment on HRDC's claims against each Defendant in their individual capacity. There remains a dispute of fact that precludes summary judgment as to HRDC's due process facial challenge to the 2022 AD.

E N T E R:

Dated: January 16, 2026

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge